IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS



FILED
January 27, 2021
ST-2017-CV-00307
TAMARA CHARLES
CLERK OF THE COURT

### IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

|  |  |
|---|---|
| GOURMET GALLERY CROWN BAY, INC., ) | ) |
| ) | Case No. ST-2017-CV-00307 |
| Plaintiff, ) | ) |
| v. ) | JURY TRIAL DEMANDED |
| ) | |
| CROWN BAY MARINA, L.P. and FRANK'S ) | INTENTIONAL |
| ELECTRIC, ) | DESTRUCTION OF |
| ) | PROPERTY |
| ) | NEGLIGENCE |
| Defendants. ) | |
| ) | |

2021 VI Super 11U

## MEMORANDUM OPINION

¶1 **THIS MATTER** is before the Court on Plaintiff's Motion to Compel Complete and Accurate Discovery Answers from Defendant Crown Bay Marina ("motion to compel Crown Bay"),[1] and Plaintiff's Motion to Compel Complete and Accurate Discovery Answers from Defendant Frank's Electric ("motion to compel Frank's Electric")[2] filed by Plaintiff Gourmet Gallery Crown Bay, Inc. ("Gourmet Gallery").

---

[1] The motion to compel Crown Bay Marina was filed October 2, 2018, and is fully briefed.
[2] The motion to compel Frank's Electric was filed July 12, 2018, and is fully briefed.

## I. FACTS

¶2   On August 23, 2018, Gourmet Gallery filed an amended complaint against Defendants Crown Bay Marina, L.P. ("Crown Bay Marina") and Frank's Electric.[3] In the first amended complaint, and the original complaint, Gourmet Gallery alleges that it is a tenant under a lease for commercial property from Crown Bay Marina, and that on October 24, 2016, it received a memorandum from Crown Bay Marina regarding a "scheduled power outage," which stated the following: Frank's Electric, a local electrical contractor, would be shutting down power to the Marina later that evening; that power outages would occur intermittently throughout the course of the week; and that the "emergency generator [would] engage when the power [was] shut down for [its] tenants." which led Gourmet Gallery to believe its 4,800 square foot store would be powered by Crown Bay Marina's generator. However, Gourmet Gallery alleges Crown Bay Marina failed to connect Gourmet Gallery to Crown Bay Marina's generator, but all other tenants were connected to the generator.

¶3   In its first amended complaint, Gourmet Gallery alleges that all this occurred while Gourmet Gallery's generator was not working properly. Additionally, in its first amended complaint, Gourmet Gallery alleges that it hired Plan B, LLC to conduct repairs to its generator, and that by letter dated July 28, 2016, Gourmet Gallery requested that Crown Bay Marina hook up Gourmet Gallery to the Marina's

---

[3] The motion to amend was formally granted on December 19, 2019; but, the clean copy is attached to Gourmet Gallery's motion filed August 23, 2018.

generator in case of emergencies. Gourmet Gallery's first amended complaint alleges that Crown Bay Marina declined to hook Gourmet Gallery up to the generator because it said its generator did not have sufficient capacity.[4]

¶4    In both complaints,[5] Gourmet Gallery alleges that, as a result of not connecting it to Crown Bay Marina's generator, Gourmet Gallery's products in its multiple freezers and refrigerators spoiled in a matter of hours and it lost a significant amount of inventory. Additionally, Gourmet Gallery alleges that, as a result of not disconnecting or shutting down its main electrical panel, Gourmet Gallery's electrical equipment suffered irreparable harm.

¶5    Gourmet Gallery alleges Crown Bay Marina and Frank's Electric neglected to ensure that Gourmet Gallery's equipment and inventory would not be destroyed while Frank's Electric performed work during the week of October 24, 2016.[6] Gourmet Gallery seeks compensatory damages for this negligence. Alternatively, Gourmet Gallery alleges that damage to its equipment and inventory was caused by Crown

---

[4] The allegations in this paragraph are only stated in the first amended complaint, which was not approved by the Court at the time Gourmet Gallery filed its motion to compel. However, these allegations are relevant to Gourmet Gallery's claims, which are the same in the original complaint and the first amended complaint. Moreover, Gourmet Gallery argues in its motion to compel that Crown Bay Marina has responded to discovery requests by stating that it did not have capacity to hook Gourmet Gallery up to the generator. *See* (Mot. Compel Crown Bay 7-8). Therefore, the Court finds no prejudice with including these allegations.

[5] That is, in the original complaint and the first amended complaint.

[6] As argued by Crown Bay Marina, Gourmet Gallery's first amended complaint was not yet granted by the Court when Gourmet Gallery filed its motion to compel, even though Gourmet Gallery refers to the amended complaint in its motion. However, the Court granted Gourmet Gallery's first amended complaint December 19, 2019. Even if Gourmet Gallery's first amended complaint had not been granted, the Court would still grant Gourmet Gallery's motions to compel because the Court finds the discovery requests relevant to Gourmet Gallery's counts, which are the same in the amended and original complaint.

Bay Marina's intentional or reckless and wanton actions. Gourmet Gallery seeks compensatory and punitive damages for these actions.[7]

¶6    Gourmet Gallery served certain discovery requests on Crown Bay Marina and Frank's Electric. Gourmet Gallery has subsequently filed this motion to compel for one discovery objection from Crown Bay Marina and several discovery objections from Frank's Electric. The objections are addressed below.

## II. LEGAL STANDARD

¶7    In deciding whether Gourmet Gallery's motions to compel should be granted or denied, the Court considers relevant portions of the Virgin Islands Rules of Civil Procedure, below, and case law.

**V.I. R. CIV. P. 26(b)(1)**

**(b) Discovery Scope and Limits.**

> **(1)Scope in General.** Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Information within this scope of discovery need not be admissible in evidence to be discoverable.

**V.I. R. CIV. P. 37(a)(1)**

**(a) Motion for an Order Compelling Disclosure or Discovery.**

> **(1) In General.** On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer

with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

## V.I. R. Civ. P. 37-1

**(a) Good Faith Negotiation Requirement.** Prior to filing any motion relating to discovery pursuant to Rules 26 through 37, other than a motion relating to depositions under Rule 30, counsel for the parties and any self-represented parties shall confer in a good faith effort to eliminate the necessity for the motion -- or to eliminate as many of the disputes as possible.

**(b) Demanding Party's Specification Letter.** The party requesting resolution of a discovery dispute shall serve a letter on other counsel identifying each issue and/or discovery request in dispute, stating briefly the moving party's position with respect to each (and providing any legal authority), and specifying the terms of the discovery order to be sought.

**(c) Conference Arrangements and Personal Negotiations Requirement.**

**(1) *Facilitating a Conference.*** After service of the letter request, it shall be the responsibility of counsel for the requesting party to make any necessary arrangements for a conference.

**(2) *Personal Discussions Requirement.*** To the extent practicable, counsel are encouraged to meet in person at a mutually convenient location. If, in the consideration of time and/or resources, counsel agree that meeting in person is not practicable, the conference may take place telephonically or by video conferencing. Mail or e-mail exchanges are not sufficient.

**(3) *Completion of Negotiations.*** Unless otherwise provided by stipulation of the parties, or by written order of the court, the conference shall be completed within 15 days after the moving party serves a letter requesting such conference.

## III. DISCUSSION

### A. Motion to Compel

¶8    Gourmet Gallery certifies that the parties conferred in good faith before it filed its motion to compel. Neither Crown Bay Marina nor Frank's Electric object to the substance of Gourmet Gallery's certifications. However, Frank's Electric argues that Gourmet Gallery failed to follow V.I. R. CIV. P. 37(a)(1) procedurally by not "includ[ing] any separate certificate by [Gourmet Gallery]'s counsel regarding . . . attempts to resolve this discovery dispute without court action." However, Frank's Electric concedes that "[Gourmet Gallery]'s [m]otion . . . include[s] a section titled as 'Procedural Compliance with Rule 37.1' that "accurately recites the efforts of counsel for both . . . parties to resolve this dispute without court action."

¶9    The V.I. Rules of Civil Procedure are unclear regarding whether a "separate certificate" is required to comply with V.I. R. CIV. P. 37(a)(1). *See Arvidson v. Buchar*, Case No. ST-16-CV-410, 2018 V.I. LEXIS 149, at *8 (V.I. Super. Ct. June 6, 2018) (unpublished) ("the current [V.I. R. CIV. P.] 37 and . . . 37-1 fail to specify whether a good faith negotiation certification is to be included within the body of a motion to compel or appended to it"). In *Arvidson v. Buchar*, the Superior Court of the Virgin Islands states that, "[i]n the future, to conserve judicial resources, the [c]ourt asks parties submitting motions to compel to include their good faith negotiation certification in one document appended to the motion to compel or within a self-contained section of the motion." *Id.* at *10. In this instance, Gourmet Gallery

included its 37(a)(1) "confer in good faith" certification in a "self-contained section of the motion to compel." *See id.*

¶10   The Court finds this placement sufficient to satisfy the V.I. R. CIV. P. 37(a)(1) requirement.[8] Moreover, the Court finds that the substance of Gourmet Gallery's good faith certifications meet the standard laid out in V.I. R. CIV. P. 37(a)(1) and V.I. R. CIV. P. 37-1(a)-(c)(2).

¶11   Under V.I. R. CIV. P. 26(b)(1), "[u]nless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Information within this scope of discovery need not be admissible in evidence to be discoverable." This rule sets a low standard for gathering discovery. *See Finn v. Adams*, Case No. ST-16-CV-752, 2017 V.I. LEXIS 162, at *5-7 (V.I. Super. Ct. Nov. 28, 2017) (unpublished). The Court considers Gourmet Gallery's specific motions to compel requests below:[9]

---

[8] The Court is not implying that a motion to compel that does not follow *Arvidson*'s request is deficient on its face. *See Arvidson*, 2018 V.I. LEXIS 149, at *10.

[9] Frank's Electric argues that Gourmet Gallery's statement of facts in its motion to compel do not "appear of record in this action" and that "[Gourmet Gallery]'s [m]otion fails to provide any affidavits or other [supporting] documents." Frank's Electric argues that this violates V.I. R. CIV. P. 6-1(d). However, the Court did not use Gourmet Gallery's statement of facts in its motions to compel to decide if its discovery requests should be compelled. *See* (Reply Mot. Compel Frank's Electric 3) (arguing that the facts section "is entirely unnecessary for purposes of deciding the [m]otion to [c]ompel"). Instead, the Court considered Gourmet Gallery's complaint allegations and claims. *See* V.I. R. CIV. P. 26(b)(1).

## 1. Demand for Production #14 – Crown Bay Marina

¶12    Gourmet Gallery requests that Crown Bay Marina produce "[a]ny documentation regarding the specifications of Crown Bay Marina's generator. This includes, but is not limited to, information regarding the amount of power generated by the generator, the make and model, its operating requirements, the amount of Kilowatts it produces, and its terms of use." "Crown Bay [Marina] objects . . . on the basis that it is highly irrelevant, immaterial, over broad, not reasonably calculated to lead to the discovery of admissible evidence, and not sufficiently limited in time. Crown Bay Marina's generator is not at issue in, or relevant to, the instant case."

¶13    Gourmet Gallery alleges that only a few hours before the work was to commence did Crown Bay Marina tell it that electrical work would be performed on the marina and that all Crown Bay Marina tenants would be hooked up to the generator. Then, Gourmet Gallery alleges, Crown Bay Marina failed to connect the store to the generator.

¶14    Gourmet Gallery alleges in its motion to compel Crown Bay that Crown Bay Marina's generator has the capacity to power Gourmet Gallery's store and the rest of its tenants at the same time.[10] See (Mot. Compel Crown Bay 8). Whether Crown Bay

---

[10] Additionally, Gourmet Gallery contends that, "[t]hroughout the discovery process, [Crown Bay Marina] has stated that its generator is not strong enough to power [Gourmet Gallery] and [Crown Bay Marina]'s other tenants simultaneously, claiming that [Gourmet Gallery] therefore never could have been hooked up to [Crown Bay Marina]'s generator and never should have expected as much." Similarly, Gourmet Gallery contends that, "[Crown Bay Marina] has defended its refusal to hook [Gourmet Gallery] up to the generator during the scheduled power outage by claiming, despite the

Marina's generator had capacity to power Gourmet Gallery and the other tenants is relevant to Gourmet Gallery's allegation in the original complaint that it "had no reason to suspect that it would not be connected to . . . Crown Bay Marina's generator."[11] Additionally, this information is relevant to Gourmet Gallery's claims that Crown Bay Marina intentionally, or recklessly, ruined Gourmet Gallery's inventory and that Crown Bay Marina acted negligently by not hooking the store up to the generator.

¶15 Crown Bay Marina argues that, "the only issue in [Gourmet Gallery]'s . . . [c]omplaint that in any way concerns [Crown Bay Marina]'s generator is whether [Crown Bay Marina] was required to connect [Gourmet Gallery] to its generator." Moreover, Crown Bay Marina argues, "[r]esolution of this issue does not require the disclosure of the specifications of [Crown Bay Marina]'s generator. Rather, the issue can be determined by the terms of the [l]ease and correspondence leading up to the events alleged." However, discovery need not be required for the resolution of an issue, it need only be relevant to a party's claims or defenses, and the Court finds that Gourmet Gallery's discovery request is relevant to its claims. Therefore, Crown Bay Marina must produce the responsive documents. V.I. R. CIV. P. 26(b)(1).

---

language in the memorandum, that its generator is not capable of powering [Gourmet Gallery] and [Crown Bay Marina]'s other tenants."

[11] Additionally, Gourmet Gallery's first amended complaint alleges that Crown Bay Marina stated a month before the repairs that its generator did not have capacity to supply power to Gourmet Gallery and the marina's other tenants, although Gourmet Gallery believes the generator did have such capacity. *See* (First. Am. Compl. ¶¶ 20-21).

### 2. Interrogatory No. 7 - Frank's Electric

¶16    Gourmet Gallery asks if "Frank's Electric or any of its agents or employees aware [sic] that Gourmet Gallery's generator was not functioning during October 24, 2016? [And] [i]f so, how was Frank's Electric made aware?" Frank's Electric objects to the interrogatory, responding that the question "exceeds the scope of discovery as [it] is not relevant to any party's claim or defense."[12] Gourmet Gallery claims that "Frank's Electric owed a duty to Gourmet Gallery properly [sic] perform electrical work within the marina in a manner that would not destroy Gourmet Gallery's equipment." Additionally, Gourmet Gallery claims that "Frank's Electric breached that duty by failing to adequately monitor the electrical current being sent to Gourmet Gallery's electrical equipment and to take steps to ensure that Gourmet Gallery would be protected from surges and other damaging consequences from the work that it was performing." The answer to the above interrogatory would reveal whether Frank's Electric knew Gourmet Gallery's generator was inoperable and, at the least, potentially help prove Gourmet Gallery's claim that Frank's Electric acted negligently when it performed work on Crown Bay Marina, as Gourmet Gallery

---

[12] Frank's Electric makes the following argument in opposition to Gourmet Gallery's motion to compel regarding interrogatory Nos. 7, 10 and 25 and requests Nos. 7 and 9:

> The question of whether [Gourmet Gallery]'s own generator was operating at the time, or not, is a matter within [Gourmet Gallery]'s own knowledge. Whether Frank's Electric had knowledge of the condition of [Gourmet Gallery]'s generator is not relevant to [Gourmet Gallery]'s vague allegation of "failing to adequately monitor the electrical current."

This argument does not sway the Court's finding that these discovery requests are relevant to Gourmet Gallery's claim against Frank's Electric.

argues the negligence was "likely guided by [Frank's Electric's] negligence in ascertaining the status of [Gourmet Gallery's] generator." Therefore, Frank's Electric will be required to answer this interrogatory.

### 3. Interrogatory No. 10 for Frank's Electric

¶17 Gourmet Gallery asks Frank's electric to "state all the actions [it took] to determine whether Gourmet Gallery had a working generator or was hooked up to a working generator before commencing work on or around October 24, 2016." Frank's Electric objects to the interrogatory, stating that the question "exceeds the scope of discovery as [it] is not relevant to any party's claim or defense." However, the Court finds that this interrogatory is relevant. For example, if Frank's Electric took no steps to determine whether Gourmet Gallery was connected to a generator before commencing the electrical work, Gourmet Gallery can potentially use this information to argue that Frank's Electric was negligent. So, Frank's Electric must answer the interrogatory.

### 4. Interrogatory No. 11 for Frank's Electric

¶18 Gourmet Gallery asks Frank's Electric to "state all actions taken . . . to determine whether Gourmet Gallery's electrical equipment, including but not limited to its rack system, would not be damaged by the electrical surges (turning the power on and off repeatedly) that occurred while working on the high voltage." Frank's Electric objects to the interrogatory, arguing that the question "exceeds the scope of

discovery as [it] is not relevant to any party's claim or defense."[13] However, the Court finds this interrogatory relevant to Gourmet Gallery's claim that Frank's Electric breached its duty to "properly perform electrical work within the marina in a manner that would not destroy Gourmet Gallery's equipment" "by failing to adequately monitor the electrical current being sent to Gourmet Gallery's electrical equipment and to take steps to ensure that Gourmet Gallery would be protected from surges and other damaging consequences from the work that [Frank's Electric] was performing." Therefore, Frank's Electric must answer the interrogatory.

### 5. Interrogatory No. 16 from Frank's Electric

¶19    Gourmet Gallery asks Frank's Electric, "[w]hat type of investigation . . . [it] conduct[ed] to determine the type of compressor utilized by Gourmet Gallery?" Gourmet Gallery also asks Frank's Electric to "[s]tate in detail why [it] did not verify whether Gourmet Gallery had Scroll or Reciprocal compressors." Frank's Electric objects to the interrogatory, arguing that the question "exceeds the scope of discovery as [it] is not relevant to any party's claim or defense." Gourmet Gallery responds to Frank's Electric's objection by contending, "[m]ost compressors [that are like

---

[13] Frank's Electric makes the following argument in opposition to Gourmet Gallery's motion to compel regarding interrogatory Nos. 11 and 16 and request No. 14:

> [Gourmet Gallery]'s complaint does not allege that Frank's Electric had any relationship, contractual or otherwise, with [Gourmet Gallery]. Moreover, there is no allegation that Frank's Electric had any duty to inspect [Gourmet Gallery]'s electrical or refrigeration equipment. The information sought by these interrogatories and requests for admissions is not relevant to the vague allegation of a failure to "adequately monitor the electrical current."

This argument does not sway the Court's finding that these discovery requests are relevant to Gourmet Gallery's claim against Frank's Electric.

Gourmet Gallery's] are either Scroll or Reciprocal compressors[, and] [b]y nature, compressors not designed for rapid power surges will immediately begin to deteriorate when experiencing sudden increases and decreases in power." Additionally, Gourmet Gallery explains that "[it]'s compressors, an extremely vital and expensive set of electrical equipment, were not designed to survive the abuse sustained by . . . Frank's Electric's negligence." The Court finds that this interrogatory is relevant to Gourmet Gallery's negligence claim against Frank's Electric. Therefore, Frank's Electric will be required to answer the interrogatory.

### 6. Interrogatory No. 21 – Frank's Electric

¶20    Gourmet Gallery asks if "Frank's Electric ever notified Crown Bay Marina, either orally or in writing, that Crown Bay Marina's high voltage transponder . . . was in need of repair or replacement?" Frank's Electric objects to the interrogatory, arguing that the question "exceeds the scope of discovery as [it] is not relevant to any party's claim or defense." Gourmet Gallery responds to Frank's Electric's objection by arguing that the condition of "Crown Bay Marina's . . . high voltage transponder[] . . is believed to be one of the catalysts for Gourmet Gallery's damages." Gourmet Gallery emphasizes that, "[u]pon information and belief, . . . Frank's Electric had notified Crown Bay . . . that their high voltage transponder was in need of repair or replacement." Gourmet Gallery argues that "it is material to th[e] case whether . . . Crown Bay['s] . . . transponder was faulty or in need of repairs, and whether . . . Frank's Electric had alerted . . . Crown Bay . . . of this fact."

¶21    Frank's Electric argues in its opposition that "[t]he condition of a 'high voltage transponder' that was not the subject of the work performed in October 2016 is not relevant to any claim or defense in this action."

¶22    However, the Court finds the question is relevant to Gourmet Gallery's claims. If Frank's Electric and Crown Bay Marina knew that the transponder needed replacement or repair, but didn't fix it, and then the transponder caused damage to Gourmet Gallery's store during Frank's Electric's electrical work in October 2016, Gourmet Gallery may be able to use this fact to argue negligence. Therefore, Frank's Electric will be required to answer the interrogatory.

### 7. Interrogatory No. 25 – Frank's Electric

¶23    Gourmet Gallery asks if "any[one] . . . [from] Frank's Electric had any contact with any[one] . . . from Plan B, LLC since January 1, 2016 regarding Gourmet Gallery's generator in any way," and "[i]f so, [to] . . . state who those discussions or correspondence [occurred] with, the nature of the information, and what disclosures took place." Frank's Electric objects to the interrogatory, arguing that the question "exceeds the scope of discovery as [it] is not relevant to any party's claim or defense." Gourmet Gallery's response to Frank's Electric's objection contends that "Plan B, LLC, is the company that was employed by [Gourmet Gallery] to repair its generator prior to October 2016." The Court finds that this interrogatory is relevant to Gourmet Gallery's negligence claim against Frank's Electric, for example, to determine whether Frank's Electric was aware that Gourmet Gallery did not have a working

generator before it commenced electrical work on Crown Bay Marina, and what if anything Plan B, LLC told Frank's Electric about the generator. Therefore, Frank's Electric will be required to answer the interrogatory.

### 8. Request for admission No. 7 – Frank's Electric

¶24    Gourmet Gallery requests that Frank's Electric "ADMIT OR DENY THAT [it] . . . had communications, directly or indirectly, with [anyone] . . . [from] Plan B, LLC regarding Gourmet Gallery's generator." Frank's Electric objects, arguing that "[the] request for admission is vague and over broad, and requests information beyond the scope of permissible discovery as it is not relevant to any party's claim or defense in this action." However, the Court finds that this request is relevant for the same reason as interrogatory No. 25 above.

### 9. Request for admission No. 9 – Frank's Electric

¶25    Gourmet Gallery requests that Frank's Electric "ADMIT OR DENY THAT [it] w[as] aware that Plan B, LLC was repairing Gourmet Gallery's generator during October 2016." Frank's Electric objects, arguing that "[the] request for admission is vague and over broad, and requests information beyond the scope of permissible discovery as it is not relevant to any party's claim or defense in this action." However, the Court finds that this request is relevant for the same reason as interrogatory No. 25 above.

### 10. Request for admission No. 14 – Frank's Electric

¶26    Gourmet Gallery requests that Frank's Electric "ADMIT OR DENY that [it]
did not ask Gourmet Gallery what type of compressors [Gourmet Gallery] had."
Frank's Electric objects, arguing that "[the] request for admission is vague and over
broad, and requests information beyond the scope of permissible discovery as it is not
relevant to any party's claim or defense in this action." However, the Court finds that
this request is relevant for the same reason as interrogatory No. 16 above.

### B. Gourmet Gallery's request for sanctions

¶27    Both of Gourmet Gallery's motions to compel include a request for sanctions,
*i.e.*, attorney's fees, under V.I. R. CIV. P. 37.

Under V.I. R. CIV. P. 37(a)(5)(A),

> If the motion is granted -- or if the disclosure or requested discovery is
> provided after the motion was filed -- the court must, after giving an
> opportunity to be heard, require the party or deponent whose conduct
> necessitated the motion, the party or attorney advising that conduct, or
> both to pay the movant's reasonable expenses incurred in making the
> motion, including attorney's fees. But the court must not order this
> payment if:
>
> **(i)** the movant filed the motion before attempting in good faith to obtain
> the disclosure or discovery without court action;
> **(ii)** the opposing party's nondisclosure, response, or objection was
> substantially justified; or
> **(iii)** other circumstances make an award of expenses unjust.

V.I. R. CIV. P. 37(a)(5)(A)(i)-(iii). This Court did not find a locally reported case that
defines or analyzes "substantially justified" for the above rule. Therefore, the Court
looks to the federal court for its analysis of the comparable provision in FED. R. CIV.

P. 37(a)(5)(A). In *Chemical Bank v. Lampe Family Living Trust*, Civil No. 2018-23, 2019 U.S. Dist. LEXIS 153069 (D.V.I. Sept. 9, 2019) (unpublished), the District Court of the Virgin Islands defines "[s]ubstantial justification [a]s 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with [a] disclosure request.'" *Chem. Bank*, 2019 U.S. Dist. LEXIS 153069, at *4 (third alteration in original) (citing *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009)).

¶28     Crown Bay Marina argues that, "[Gourmet Gallery] seeks sanctions in the form of costs incurred simply as a result of filing the [m]otion to [c]ompel" and "offers no basis to impose such sanctions." Moreover, Crown Bay Marina argues that, "[s]anctions are generally reserved to punish non-compliance and deter those who might be tempted to engage in wrongful conduct in the absence of a deterrent." *See* (citing *Battiste v. V.I. Tel. Corp.*, 48 V.I. 3, 9 (V.I. Super. Ct. 2006)). Crown Bay Marina contends that the "discovery dispute" between itself and Gourmet Gallery "is not based on bad faith or a means to perpetrate a fraud on the Court, and therefore there is nothing for the Court to punish or deter." However, this argument is counter to V.I. R. Civ. P. 37(a)(5)(A), which plainly requires that if a motion to compel is filed, and "the motion is granted . . . the court *must* . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees," except under certain circumstances, none of which apply here. *See* V.I. R. Civ. P. 37(a)(5)(A)(i)-(iii) (emphasis added);

*Fenton v. People*, 69 V.I. 889, 897 (V.I. 2018) ("The plain and unambiguous language of a court rule controls"). The rule contains no requirement that an objecting party be engaged in wrongdoing, bad faith or fraud before fees are awarded.

¶29     Crown Bay Marina argues that its discovery objection was substantially justified.[14] *See* V.I. R. Civ. P. 37(a)(5)(A)(ii). However, the Court finds that neither Crown Bay Marina nor Frank's Electric were substantially justified in withholding discovery responses. Although the amended complaint was not granted at the time the motion to compel was filed, there is a clear connection between the original complaint and the contested discovery requests. For instance, the original complaint is clear that failing to hook Gourmet Gallery up to the generator is an issue in this case. Moreover, Gourmet Gallery contends that throughout discovery, "[Crown Bay Marina] has stated that its generator is not strong enough to power [Gourmet Gallery] and [Crown Bay Marina]'s other tenants simultaneously, claiming that [Gourmet Gallery] therefore never could have been hooked up to [Crown Bay Marina]'s generator and never should have expected as much."

---

[14] Crown Bay Marina argues that its discovery objection is justified for the following reasons: The rights and duties of the parties can be determined through the subject Lease. Whether or not [Crown Bay Marina]'s generator has sufficient power to accommodate [Gourmet Gallery] is immaterial to whether [Crown Bay Marina] had a duty to connect [Gourmet Gallery] to said generator. Moreover, there is nothing in the Lease that would suggest that [Crown Bay Marina] had such a duty, and correspondence attached to [Gourmet Gallery]'s [m]otion to [c]ompel further evidences [Gourmet Gallery]'s awareness that it had no agreement with [Crown Bay Marina] to connect to the generator.

¶30    Additionally, the original complaint alleges that, "[d]uring the week of repairs [by Frank's Electric], Gourmet Gallery's main electrical panel was neither disconnected nor shut down, . . . subjecting Gourmet Gallery's electrical equipment to hazardous electrical pulses in a manner inconsistent with their design." Further, the original complaint alleges that Frank's Electric breached its duty to "properly perform electrical work within the marina in a manner that would not destroy Gourmet Gallery's equipment" "by failing to adequately monitor the electrical current . . . and to take steps to ensure that Gourmet Gallery would be protected from surges and other damaging consequences from" Frank's Electric's work.

¶31    To reiterate, these allegations from the original complaint, and Crown Bay Marina's response discussing the generator's capacity, are clearly relevant to Gourmet Gallery's requests for: (1) information regarding the generator and (2) steps Frank's Electric took, and the information Frank's Electric knew, before commencing electrical work in October 2016.

¶32    Additionally, the Court finds that Crown Bay Marina and Frank's Electric had an opportunity to argue that the Court should not award reasonable expenses. *See* V.I. R. CIV. P. 37(a)(5)(A) ("If the motion [to compel] is granted . . . the court must, after giving an opportunity to be heard, require . . . pay[ment] [of] the movant's reasonable expenses incurred in making the motion, including attorney's fees"). Gourmet Gallery argued for sanctions in the form of attorney's fees in its motions to

compel Crown Bay Marina and Frank's Electric. Crown Bay Marina addressed the issue in its opposition, but Frank's Electric did not.

¶33    Therefore, the Court will order Gourmet Gallery to file an itemized application for fees incurred as a result of having to file the motions to compel. *See Guardian Ins. Co. v. Estate of Knight-David*, Case No. ST-08-CV-189, 2015 V.I. LEXIS 124, at *21 (V.I. Super. Ct. Sept. 30, 2015) (unpublished).

### C. Crown Bay Marina's motion to file out of time

¶34    In Crown Bay Marina's opposition to Gourmet Gallery's motion to compel, Crown Bay Marina includes a motion to file its opposition out of time. Gourmet Gallery does not oppose the motion. Moreover, the Court sees no risk of prejudice or delay. *See* V.I. R. CIV. P. 6(b)(1). Therefore, the Court will grant the motion and accept Crown Bay Marina's opposition.


## IV. CONCLUSION

¶35    The Court finds Gourmet Gallery's discovery requests that were objected to by Crown Bay Marina and Frank's Electric are relevant to Gourmet Gallery's claims. Therefore, the Court will grant Gourmet Gallery's motions to compel.

¶36    Additionally, the Court finds that Gourmet Gallery is entitled to "reasonable expenses[,] . . . including attorney's fees," under V.I. R. CIV. P. 37(a)(5)(A). Therefore, the Court will order Gourmet Gallery to file an itemized application for fees incurred

as a result of having to file the motions to compel. *See Guardian Ins. Co.*, 2015 V.I. LEXIS 124, at *21.

¶37    Crown Bay Marina's motion to file its opposition to Gourmet Gallery's motion to compel out of time was unopposed. Therefore, the Court will grant the motion.

An Order consistent with this Memorandum Opinion will be entered.

DATED: January 27, 2020

                                           **Kathleen Mackay**
                                 Judge of the Superior Court
                                  of the Virgin Islands

ATTEST:
**TAMARA CHARLES**
Clerk of the Court

BY: _____
     **LORI BOYNES-TYSON**
     Chief Deputy Clerk   1 / 27 / 2021